Filed 1/7/21  P. v. Bastida CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>GEORGE NEWTON BASTIDA,<br><br>        Defendant and Respondent. | A158506<br><br>(Alameda County Super.<br>Ct. No. 19-CR-011446) |

In 2012, defendant George Bastida was released from prison and placed on a three-year term of parole.  Over the next several years, Bastida repeatedly absconded from parole supervision and served several months in jail for parole violations.  In 2019, the California Department of Corrections and Rehabilitation (CDCR) petitioned to revoke Bastida's parole on the basis of violations that allegedly took place in September of 2018.  The trial court concluded that Bastida had already completed the statutory maximum parole term by the time of those violations and terminated his parole supervision.  We reverse.

**BACKGROUND**

In 2001, Bastida was convicted of second-degree auto burglary (Pen. Code, § 459)[1] and receiving stolen property (§ 496), with enhancements for three prior prison terms (§ 667.5, subd. (b)), and was sentenced to 10 years 8

_____

[1] Further statutory references are to the Penal Code.

1

months in prison. On May 15, 2012, Bastida was released from prison, subject to a three-year parole term, with an initial parole discharge date of May 15, 2015.

Over the next several years, Bastida repeatedly absconded from parole supervision. In particular, on seven separate instances between May 1, 2013, and June 17, 2018, Bastida absconded five times for a total of 1,048 days, and again from September 4, 2018 to July 18, 2019 and from July 31 to August 1, 2019 for a further 318 days, for a total of 1,366 days.[2] In addition, on five separate instances between December 13, 2002, and June 27, 2018, Bastida was in jail on parole revocations for periods totaling 212 days.

On July 24, 2019, the CDCR filed a petition to revoke Bastida's parole in Alameda County Superior Court, alleging that on September 4, 2018, Bastida removed his GPS tracking device and absconded from parole supervision, and that he failed to register as a sex offender by September 30, 2018, as required by the terms of his parole.

At a hearing held July 26 on the revocation petition, the trial court inquired why Bastida was still on parole, given that his parole term began in May of 2012. The trial court also stated, "I'm assuming they added a bunch of in-custody time, which I don't believe they can do." The trial court then asked Bastida's parole agent to provide a calculation worksheet explaining their contention that Bastida was still on parole, and set a further hearing for August 2.

A very brief further hearing took place on August 9, at which the trial court found:

---

[2] In his opening brief, the Attorney General contends there were 1,366 days of absconding time, while on reply, a more detailed calculation yields 1,365 days. This discrepancy does not affect our resolution of this appeal.

2

"THE COURT: So I've re-looked at the calculation on this. I've come to the same conclusion that he should be off parole. He has 1,047 days of absconding time, which if you add that to his original discharge date of May 14th of the year 2015, that would mean that his parole could legally be extended until March 31st of the year 2018. So he has been off parole for the last year.

"So when this petition was first—and this absconding occurred in September of 2018. He should have been off parole. So by operation of law, I'm terminating his parole. He's off parole."

Bastida's parole agent then objected, and the hearing concluded.

On September 16, the Attorney General, representing the CDCR, moved for reconsideration of the August 9 order. The Attorney General argued that the trial court's order "essentially terminated Bastida's parole," and was thus beyond the trial court's authority under section 1203.2, subdivision (b)(1), which provides: "Upon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may modify, revoke, or terminate supervision of the person pursuant to this subdivision, except that the court shall not terminate parole pursuant to this section."

On September 27, the trial court issued a written order denying the motion for reconsideration, concluding that "[t]erminating the supervision of a parolee is not the equivalent of terminating someone's parole."

The Attorney General appeals.[3]

---

[3] The Attorney General previously filed a petition for a writ of supersedeas, which was denied.

## DISCUSSION

The Attorney General argues that: (1) the trial court erred in concluding that Bastida's parole term had ended by September 4, 2018; and (2) the trial court lacked the authority to terminate Bastida's parole supervision under section 1203.2, subdivision (b)(1). Since the material facts are undisputed, each of these is a pure question of law, which we review de novo. (See *People v. Townsend* (2020) 53 Cal.App.5th 888, 892 (*Townsend*).) We agree with the first argument, and need not reach the second.

### *Bastida's Statutory Maximum Parole Term Had Not Ended by September 4, 2018*

Section 3000, subdivision (b)(6) provides in relevant part: "Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation." Section 3000, subdivision (b)(6)(A) goes on to provide: "Except as provided in Section 3064, in no case may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole." And section 3064 provides: "From and after the suspension or revocation of the parole of any prisoner and until his return to custody he is an escapee and fugitive from justice and no part of the time during which he is an escapee and fugitive from justice shall be part of his term."

The Attorney General argues that Bastida's parole discharge date should have been extended by both the 1,366 days he absconded from supervision and the 212 days he spent in jail for parole revocations, asserting that the proper parole discharge date as of September 4, 2018 was October 25, 2018. Bastida argues that because the 1,049 days of absconding up until

4

June 17, 2018, had already extended his parole beyond the four-year limit in section 3000, subdivision (b)(6)(A), the 212 days spent in jail on parole revocations could not further extended his parole discharge date, meaning the proper parole discharge date was in March of 2018. We agree with the Attorney General.

In *Townsend, supra,* 53 Cal.App.5th 888, Division Four of our court addressed the same issue now before us. There, the trial court concluded " '[t]here is no statutory authority for extending a parole term for incarceration that occurs after reinstatement' of parole, so the time Townsend spent incarcerated on parole violations after absconding could not extend his parole term." (*Id.* at p. 892.) *Townsend* reversed, and explained, in language equally applicable here:

"There is a limit on the total amount of time a parolee can be on parole supervision or jailed on parole violations. Section 3000, subdivision (b)(6)(A) (section 3000(b)(6)(A)) reads, 'Except as provided in Section 3064, in no case may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole.' This means that [Bastida]'s parole extends past [May 15, 2016] only 'as provided in Section 3064.' Section 3064 tolls the parole period while a parolee is at large. It reads, 'From and after the suspension or revocation of the parole of any prisoner and until his return to custody he is an escapee and fugitive from justice and no part of the time during which he is an escapee and fugitive from justice shall be part of his term.'

"In [*People v.*] *Pearl* [(2009)] 172 Cal.App.4th [1280,] 1290, our colleagues in the Fourth District held a parolee is not a fugitive from justice under the language of section 3064 when that individual is in custody on

parole violations. But a parolee is, by definition, a fugitive from justice when that individual is absconding from parole supervision. Therefore, under section 3000(b)(6)(A) a three-year 'parole term may not' be extended to 'exceed four years plus the amount of time the parolee had been a fugitive from justice . . . regardless of how much time the parolee spends in confinement for parole revocations.' (*Id*. at p. 1290.) That is, time spent absconding from parole supervision suspends the parole period indefinitely, while ' "[t]ime spent in custody on a parole violation . . . extends the parole period" ' such that a parolee ' "may not be retained on parole supervision or in custody on a parole violation for more than four years. " ' (*Id*. at p. 1291.)" (*Townsend*, *supra*, 53 Cal.App.5th 888 at pp. 893–894.)

Thus, as in *Townsend*, because Bastida's 212 days in jail on probation violations total less than a full year, each of those days in jail extends his parole term by one day, so that as of September 4, 2018, his initial discharge date of May 15, 2015 had been pushed out by 212 days plus 1,048 days of absconding—a total of 1,260 days—meaning that on September 4, 2018, Bastida's discharge date was still some 52 days away. (See *Townsend*, *supra*, 53 Cal.App.5th 888 at p. 894.) Accordingly, Bastida was still on parole on September 4, 2018, and the trial court's order concluding to the contrary must be reversed.

As noted, the Attorney General also argues that the trial court did not have the statutory authority to terminate Bastida's parole supervision under section 1203.2, as the trial court concluded in its written opinion on the motion for reconsideration. Bastida argues that this issue need not be resolved because the trial court did not terminate his parole supervision pursuant to section 1203.2, but rather concluded that he must be "discharged from [parole]" because he had already reached the "maximum statutory

6

period of parole" under section 3000, subdivision (b)(6).  (See § 3000, subd. (b)(6) ["[A]t the end of the maximum statutory period of parole specified for the inmate . . . the inmate shall be discharged from custody"].)

In light of our conclusion that the trial court erred in finding that Bastida's parole had extended beyond the statutory term by September 4, 2018, and that the trial court's order must be reversed on that basis, we need not decide whether the trial court had the statutory authority to terminate Bastida's parole supervision.  We note that our colleagues in Division Three recently agreed with the Attorney General that the trial court does not have authority to terminate parole supervision under section 1203.2.  (See *People v. Johnson* (Dec. 9, 2020, A158081) __ Cal.App.5th __ [pp. 7–8].)  The trial court should consider this authority in any proceedings on remand.

## DISPOSITION

The trial court's August 9 order terminating Bastida's parole is reversed, and the matter is remanded to recalculate Bastida's parole discharge date and for further proceedings consistent with this opinion.

7

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Miller, J.

*People v. Bastida* (A158506)

8